UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 2:14 CR 80 |
| ) | |
| ELBERT JOHNSON  ) | |

## OPINION and ORDER

This matter is before the court on defendant Elbert Johnson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) and Section 603 of the First Step Act. (DE # 73.) For the reasons that follow, the motion is granted.

I.  **BACKGROUND**

In January 2018, following his guilty plea, this court sentenced Johnson to a total term of imprisonment of 61 months, to be followed by a two-year term of supervised release, for conspiracy to commit identity theft, making fraudulent claims, aggravated identity theft, and filing a false tax return, in violation of 18 U.S.C. §§ 1028(f), 287, 1028A, and 26 U.S.C. § 7206(1). (DE # 61.) The court also imposed an order of restitution in the amount of $551,647 and payment of a $700 special assessment. (*Id.*)

Johnson is presently 43 years old and is incarcerated at FCI Seagoville, in Seagoville, Texas. Johnson has a projected release date from prison of June 28, 2021. *See* https://www.bop.gov/inmateloc/ (last accessed July 16, 2020).

On May 20, 2020, Johnson, through retained counsel, moved for release from prison pursuant to § 3582(c)(1)(A)(i). (DE # 73.) Johnson argues that his medical conditions – chronic kidney disease, high cholesterol, high blood pressure, and gout –

place him at higher risk of serious illness were he to contract COVID-19, and this risk constitutes an extraordinary and compelling reason justifying his release from prison.

## II.   ANALYSIS

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant a convicted defendant compassionate release if the defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). The court may grant a moving defendant's motion for compassionate release if: (1) the defendant has complied with the statute's administrative exhaustion requirement; (2) "extraordinary and compelling" reasons warrant a reduction in the defendant's term of imprisonment; (3) the court has considered the factors set forth in 18 U.S.C. § 3553(a), as applicable; and (4) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *Id.*

### 1.   Exhaustion

Section 3582(c)(1)(A) requires a defendant to exhaust all remedies with the Bureau of Prisons (BOP) before moving for compassionate release. Specifically, a defendant may file a request for compassionate release with a district court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*

2

The Government and Johnson agree that Johnson has satisfied this exhaustion requirement. On April 17, 2020, Johnson sent a request for compassionate release to the warden of his prison. (DE # 77-14.) It does not appear that the BOP ever responded to his request. More than 30 days later, on May 20, 2020, Johnson filed the present motion for compassionate release with this court. (DE # 73.) Thus, the court finds that Johnson has satisfied the exhaustion requirement of § 3582(c)(1)(A).

### 2. Extraordinary and Compelling Reasons

The court is only authorized to grant Johnson's request if there exists "extraordinary and compelling reasons" justifying his early release. Congress did not define "extraordinary and compelling reasons" in § 3582(c)(1)(A), instead delegating this task to the Sentencing Commission. 28 U.S.C. § 994(t). The Sentencing Commission defines this phrase in the commentary to § 1B1.13 of the United States Sentencing Guidelines. There, the Sentencing Commission states that an extraordinary and compelling reason warranting a reduction in a term of imprisonment may exist where, as is relevant here: a defendant suffers from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or there exists some other extraordinary and compelling reason justifying a reduction in the defendant's term of imprisonment.[1] U.S.S.G. § 1B1.13 cmt. n.1.

---

[1] The court notes that § 1B1.13 has not been amended to reflect the First Step Act's change to § 3582(c)(1)(A), which now permits a defendant to bring a motion for compassionate release.

3

The spread of COVID-19 has created unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation; yet, social distancing can be difficult for individuals living or working in a prison.

The prison where Johnson is currently incarcerated, FCI Seagoville, is currently experiencing the largest COVID-19 outbreak in any BOP facility in the country – and it claims this grim distinction by a wide margin. Seagoville currently has 1039 confirmed inmate cases of COVID-19. https://www.bop.gov/coronavirus/ (last accessed July 17, 2020). The facilities with the next-largest outbreaks are FCI Beaumont Low and FCI Butner Low, with 456 and 384 confirmed inmate cases, respectively. Seagoville has a total inmate population of 1,798, https://www.bop.gov/locations/institutions/sea/ (last accessed July 17, 2020); thus, more than half of the inmate population currently has COVID-19.

In June, when the Government responded in opposition to Johnson's motion, Seagoville had no confirmed cases of COVID-19 among its inmate population - today it has more than 1,000. Despite what this court assumes are its best efforts, these numbers demonstrate that the BOP has been unable to prevent the rampant spread of the virus at this facility. *See United States v. Arceo*, No. 5:09-CR-00616-EJD-1, 2020 WL 4001339, at *2 (N.D. Cal. July 15, 2020) ("The quadrupling of the COVID-19 numbers at Seagoville [over a two-week period] plainly reflect that BOP is not undertaking effective, additional emergency measures to slow the spread of the virus at the facility.").

4

In addition to considering the critical situation at FCI Seagoville, the court must also consider Johnson's specific medical risk profile. It appears that Johnson's medical conditions place him at an increased risk of harm, were he to contract COVID-19. According to the CDC, "[p]rior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes." https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed July 16, 2020). Moreover, "[p]eople with hypertension may be at an increased risk for severe illness from COVID-19 and should continue to take their medications as prescribed." *Id.*

Notably, Johnson has refused to take his hypertension medication for at least the last year, on the basis that the medication makes him dizzy. (DE # 77-1.) He has been reminded of the importance of taking his medication, and was educated on the ways in which his blood pressure effects his chronic kidney disease. (*Id.*) As of September 2019, Johnson's BOP medical records indicated that his blood pressure is "poorly controlled." (DE # 77-8.)

Johnson has stage 3 (moderate) chronic kidney disease. (DE # 77-5.) His medical records reflect that he was a patient in April 2019 for acute renal failure. (DE # 77-4.)

Johnson also has a history of diabetes, high cholesterol, and gout. (DE ## 77-1, 77-5, 77-11.) However, he is not currently on any medication for diabetes or cholesterol, and his medical records note that, as of January 2020, these conditions are in remission. (DE # 77-2 at 1.)

Johnson's medical risk factors, combined with the widespread presence of

5

COVID-19 at Seagoville, create a circumstance that is extraordinary and compelling.

### 3. Section 3553(a) Factors

The court must next consider whether there is still an extraordinary and compelling reason justifying Johnson' early release, after consideration of the applicable sentencing factors in § 3553(a). These factors include: the nature and circumstances of the offense and the characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and deter future criminal conduct; and to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a).

In this case, Johnson's offenses were serious. Throughout 2009, Johnson and his co-conspirators obtained the personal identifying information of numerous individuals – the majority of whom were incarcerated women – and filed fraudulent federal and state tax returns on their behalf, without their knowledge or permission. (DE # 51 at 5.) These false tax returns resulted in income tax refunds. (*Id.*) Johnson and his co-conspirators created online bank accounts in the names of their victims and directed that the refunds be transferred from these bank accounts onto debit cards. (*Id.* at 6.) Once the funds were received, Johnson and his co-conspirators utilized the funds for their own personal benefit. (*Id.*) During the scheme, Johnson and his co-conspirators received in excess of $500,000. (*Id.* at 6.) In addition to these crimes, Johnson also filed a false tax return on his own behalf, defrauding the government of more than $86,000. (*Id.*)

In the PSR, the Probation Office calculated Johnson's total offense level as 25, and his criminal history category as II. (*Id.* at 8, 15.) Johnson's Guidelines range was 63-78 months. (*Id.* at 15.) Johnson's prior criminal history included unlawful use of a weapon, driving without a license, driving with a suspended license, and using a communication facility to facilitate the distribution of cocaine. (*Id.* at 9-10.) These crimes all took place more than ten years before the offenses of conviction in the present case.[2]

After carefully weighing the relevant § 3553(a) factors, the court remains convinced that early release is appropriate in this case. The nature of Johnson's crimes were serious, but non-violent. The decade during which Johnson refrained from committing additional crimes demonstrates that he is capable of reform. Moreover, the court finds that the releasing Johnson 11 months early, to home confinement, would not detract from the need for the sentence imposed to reflect the seriousness of his offenses. Johnson has served 28 months of his sentence in prison. Johnson will be released under stringent terms of supervision for the next three years, and will serve 11 months of that period in home confinement. He remains obliged to pay more than $550,000 in restitution for his crimes. The court finds that these aspects of Johnson's sentence provide just punishment for his offenses, and are calculated to deter any future criminal conduct. Releasing Johnson 11 months early, after he has served a substantial portion of his sentence, does not diminish the severity of his sentence.

---

[2] There were no objections to any of these findings in the presentence report (PSR). (*See* DE # 52.)

### 4. Sentencing Commission Policy Statements

Finally, the court must consider whether early termination of Johnson's term of imprisonment is consistent with the Sentencing Commission's policy statements. The court again turns to § 1B1.13 of the Sentencing Guidelines. *See* 28 U.S.C. § 994(t).

In addition to considering whether an extraordinary and compelling reason warrants a reduction, and considering all applicable § 3553(a) factors, the Sentencing Commission's policy statement requires that courts determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13. Pursuant to § 3142(g), the court considers factors such as: the nature and circumstances of the offense charged; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

The Government has not argued that Johnson would pose a danger to the community. There is no indication in the record or in the Government's response that Johnson has received any incident reports or has had any behavioral problems during the 28 months he has been incarcerated with the BOP. Moreover, Johnson was released on his own recognizance for three and a half years while his criminal case was pending, before he surrendered to the BOP to serve his sentence, with no violations or reported incidents. (*See* DE ## 11, 60, 51.) Finally, Johnson will be monitored during the duration of his home confinement and supervised release. Considering these facts, along with the factors set forth in § 3142(g), the court finds that Johnson's release from prison 11 months early would not present a danger to the public.

8

### 5. Summary

Compassionate release is an extraordinary event. *United States v. Pena*, No. 2:15-CR-72-PPS, 2020 WL 3264113, at *1 (N.D. Ind. June 17, 2020). Ordinarily, when this court imposes a sentence, its intention is that the sentence will be served. However, this is not an ordinary case. The court has carefully weighed the relevant considerations and finds that the critical situation at FCI Seagoville, in combination with Johnson's particular medical conditions, creates an extraordinary and compelling reason justifying his early release from prison. *See Arceo*, 2020 WL 4001339, at *2 (granting defendant's motion for compassionate release based on the "alarming" outbreak of COVID-19 at Seagoville). The court finds that Johnson does not pose a danger to any other person or the community under the conditions of release, the § 3553(a) factors support a reduction in his term of imprisonment, and his early release is consistent with the Sentencing Commission's policy statements. Accordingly, Johnson's motion under § 3582(c) and Section 603 of the First Step Act will be granted.

## III. CONCLUSION

For the foregoing reasons, defendant Elbert Johnson's motion for compassionate release (DE # 73) is **GRANTED.** The Bureau of Prisons is directed to release Johnson as soon as possible, following a determination by the U.S. Probation Office of an acceptable living situation, and the arrangement of Johnson's transportation to that place. His sentence of imprisonment is modified to time-served. However, the remaining portion of the original term of imprisonment (until June 28, 2021), shall be served as an additional term of supervised release, subject to the same terms imposed

in this court's original judgment, and with the special condition that Johnson shall be subject to home confinement during this period. Johnson shall then complete the two-year term of supervised release imposed in the original sentence. The remaining terms of Johnson's sentence remain unchanged. Upon his release from prison, Johnson shall comply with any period of self-quarantine directed by medical staff and/or required by the state or locality where he is living. The Government shall serve a copy of this order on the Warden at Seagoville Prison, and shall file a status update with the court upon Johnson's release from prison, or by **July 22, 2020**, whichever is earlier.

                                        **SO ORDERED.**

Date: July 17, 2020

                                        s/James T. Moody
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT